IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| JACOB JAMES BERNARDS, | Case No. 3:24-cv-01522-JR |
| Plaintiff, | ORDER |
| v. | |
| PROD HOLDING, INC. *et al.*, | |
| Defendants. | |

RUSSO, Magistrate Judge:

      Pro se plaintiff Jacob Bernards initiated this action against defendants Prod Holding Inc./Progressive Leasing LLC, Cricket Wireless, Chase Bank, and Sutton Bank/Cash App. On September 25, 2024, the Court granted plaintiff's application to proceed in forma pauperis but instructed the Clerk of the Court not to issue process until further order pursuant to 28 U.S.C. § 1915(e). On November 20, 2024, the Court dismissed plaintiff's first amended complaint for failure to allege a timely and plausible claim. The Court, however, granted plaintiff leave to file a second amended complaint ("SAC") that complies with the requirements of Fed. R. Civ. P. 8(a). For the reasons stated herein, plaintiff's SAC fails to state a claim upon which relief may be granted.

Page 1 – ORDER

Under 28 U.S.C. § 1915(e), the district court must dismiss an *in forma pauperis* complaint, either sua sponte or pursuant to a motion made by the opposing party if it "is frivolous or malicious," or "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B); *Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc). To avoid dismissal under 28 U.S.C. § 1915(e), the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the plaintiff need not detail all factual allegations, the complaint must nonetheless provide "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, to state a plausible claim for relief, the complaint "must contain sufficient allegations of underlying facts" to support its legal conclusions. *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

Pro se plaintiffs do not have the benefit of legal counsel, therefore their pleadings are "held to less stringent standards" than pleadings drafted by lawyers. *Florer v. Congregation Pidyon Shevuyim, N.A.*, 639 F.3d 916, 923 n.4 (9th Cir. 2011). Even construing plaintiff's pleadings in the most favorable and liberal light, the SAC is dismissed for four reasons.

First, much of the SAC is conclusory and devoid of factual support. As with plaintiff's prior complaints, he makes allegations of "covert co-opt surveillance" and "wiretap[ping]" surrounding the use of his data by other parties. *See, e.g.*, SAC pg. 5 (doc. 9). The Court previously construed these allegations under the Federal Wiretap Act and Computer Fraud and Abuse Act, and finds that the SAC does not add any well-plead facts to cure the articulated deficiencies. Order 4-5 (Sept. 25, 2024) (doc. 5). Thus, for the reasons stated in the Court's prior Order, these types of allegations fail to state a claim. Similarly, plaintiff's allegations that social media, cookies, and preloaded applications constitute "Black OPS PSYOPS" and "digital djinn," and the "listed business breached [his] data privacy" by "using stalker ware" and are guilty of "covert

transhumanism" remain "beyond unlikely or improbable." *Id.* at 5 (quoting Order of Dismissal 5 (Case. No. 3:24-00633-CL, doc. 9)); SAC pgs. 2, 15 (doc. 9).

Second, the SAC's assertions about the wrongful actions of Prod Holding Inc./Progressive Leasing LLC and Meta/Facebook in other contexts and in relation to other individuals/entities are insufficient to maintain a claim in this case. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992) (the "irreducible constitutional minimum" of Article III standing requires the party invoking the court's jurisdiction to demonstrate they suffered an "injury in fact" that is concrete and particularized, "fairly traceable to the challenged action of the defendant," and "likely [to] be redressed by a favorable decision").

Third, the SAC includes a number of vague allegations that involve poorly defined events and/or parties that are not named as defendants. Notably, plaintiff alleges that unidentified police officers "stole" his "iPhone 14 pro max" and "artifacts" – which apparently relate to "alternate beings [and] UFOs" – "to try and cover everything up." SAC pgs. 1, 3, 8-14, 17 (doc. 9). However, the relationship between these events and plaintiff's more discrete factual allegations are unclear, such that the Court cannot conclude that the SAC's claims are timely and/or redressable. *Cf. Subramaniam v. Beal,* 2013 WL 5462339, at *4 (D. Or. Sept. 27, 2013) ("[p]laintiff arguably pleads the necessary elements with sufficient particularity as to People's Choice [but] People's Choice is not a defendant in this suit, and so no fraud claim is supported by these allegations"); *see also Sain v. City of Bend,* 309 F.3d 1134, 1139 (9th Cir. 2004) (tort and 42 U.S.C. § 1983 claims are subject to a two year statute of limitations in Oregon).

Fourth, plaintiff's distinct factual allegations are equally deficient. Plaintiff's main contention of wrongdoing continues to surround Prod Holding Inc./Progressive Leasing LLC's

Page 3 – ORDER

financing of the iPhone he purchased from Cricket Wireless, as well as purportedly fraudulent activity relating to his OnPoint Community Credit Union[1] account. The crux of the claim is as follows:

> At Cricket wireless when I purchased the iPhone 14 pro max, I signed a leasing agreement at cricket wireless through a 3rd party leasing company, Progressive leasing LLC. It was a 1-year lease agreement, the sales associate explained the leasing agreement in great detail stating "I had 90-days to pay $1200 or I could take the 1-year lease and pay $2,000. [P]rogressive leasing would charge the debt card used at the point of the sale $115.90 one time a month, and that I could repay the remaining balance at any time during the 1-year time frame laid out in the lease agreement" . . . both on point community credit union and chase bank sent me collections even though my accounts were frauded because of their own policies and procedures . . . I know for 100% fact the employees at on point are responsible for the fraud of my account, they are the only other people who had access to my account information other than myself, they flag my account froze it then sent it to collect[ion]s so the individual responsible would not get caught. Whoever did sent money from my account to [their] own and they could see it, so the only logical explanation is someone that worked there that had access to the account, flagged it and sent it to collect[ion]s so no one would notice. Someone stole money from the account then cashed [a] $3000 check into the account, I reported the check however on point processed the check anyway debiting my account to $0, [then] continued to give them another $3000 to put my account at -$3000. I talked to two different bank managers they told me they would figure it out, but instead they sent my account to collections. I don't have any of the employee's names, however the on-point customer service told me they approved the checks because someone called and told them they were me and that I said it was alright.

SAC pg. 1 (doc. 9). In other portions of the SAC, plaintiff alleges he paid "$500 [down] plus 12 payments of $115.90" for the iPhone; the leasing agreement "clearly says you have . . . to pay $2000 however they charged me $3000." *Id.* at pgs. 1, 3-4, 16.

The SAC's contract-based claims fail at the pleadings level. As the Court explained in its prior Order, "[t]o state a breach of contract claim in Oregon, the 'plaintiff must show: (1) the

---

[1] As the Court noted previously, "OnPoint Community Credit Union was listed as a defendant in plaintiff's initial complaint but has since been omitted as a named party in the amended complaint." Order 4 n.2 (doc. 8). The SAC also does not appear to name OnPoint Community Credit Union as a defendant.

Page 4 – ORDER

existence of a contract; (2) the relevant contract terms; (3) that the plaintiff fully performed and did not breach the contract; and (4) that the defendant breached the contract terms resulting in damage to the plaintiff.'" Order 6 (doc. 8) (quoting *Matchniff v. Great Nw. Ins. Co.*, 224 F.Supp.3d 1119, 1124 (D. Or. 2016)).

While plaintiff may have sufficiently alleged the existence of a contract, he has not alleged its specific terms or his full performance thereof. *See Jackson v. Gill*, 2021 WL 5239509, at *4 (D. Or. Oct. 15), *adopted by* 2021 WL 5237232 (D. Or. Nov. 10, 2021) (no viable breach of contract claim where, "even assuming a contract existed, [p]laintiff does not allege any facts about the terms of the contract or facts showing his substantial performance of the contract's terms"). Indeed, while plaintiff continues to reference what the Cricket Wireless sales associate told him about purchasing an iPhone, he does not include any details about his actual financing agreement with Prod Holding Inc./Progressive Leasing LLC.

Yet it is axiomatic that, "[t]o be liable for a breach of contract, the defendant must be a party to the contract." *Bracke v. Cnty. of L.A.*, 60 Fed.Appx. 120, 121 (9th Cir. 2003); *see also Dickson v. Travelers Cas. Ins. Co. of Am.*, 2024 WL 3595618, *3 (D. Nev. July 31, 2024) ("[i]t is black letter law, then, that a defendant must be a party to the contract at issue for a breach of contract claim to survive"). Although plaintiff purchased the iPhone from Cricket Wireless, the only contract referenced in the SAC is the one between plaintiff and Prod Holding Inc./Progressive Leasing LLC. Stated differently, plaintiff does not allege that Cricket Wireless was a party to the contract, such that the representations of its sales associate cannot form the basis of a contract claim against Prod Holding Inc./Progressive Leasing LLC.

Even if the statements of the Cricket Wireless employee could bind Prod Holding Inc./Progressive Leasing LLC, a prior oral agreement is generally superseded by a subsequent

Page 5 – ORDER

written agreement unless certain conditions are met – namely, "if the oral terms were 'not inconsistent' with the written terms," and either "the oral agreement was made for a separate consideration" or "the oral agreement is naturally made as a separate agreement by parties' similarly situated." *Claus v. Columbia State Bank*, 2019 WL 5624754, *22 (D. Or. Oct. 30, 2019) (quoting *Greenwade v. Citizens Bank of Or.*, 50 Or.App. 395, 399, 624 P.2d 610 (1981)); *see also* Or. Rev. Stat. § 41.740 ("[w]hen the terms of an agreement have been reduced to writing by the parties, it is to be considered as containing all those terms, and therefore there can be, between the parties and their representatives or successors in interest, no evidence of the terms of the agreement, other than the contents of the writing, except where a mistake or imperfection of the writing is put in issue by the pleadings or where the validity of the agreement is the fact in dispute"); *L.B. Menefee Lumbar Co. v. Gamble*, 119 Or. 224, 233, 242 P. 628 (1927) ("[t]he presumption arising from a written contract is that it truly sets forth the intention and understanding of the parties").

In sum, because plaintiff does not include his written contract with Prod Holding Inc./Progressive Leasing LLC or specifically allege its terms, it is impossible for the Court to determine whether: (1) that agreement was partially or fully integrated, (2) the Cricket Wireless employee's statements about financing were inconsistent therewith, or (3) there were other fees associated with the leasing agreement that could account for the purportedly increased costs that plaintiff was assessed.

Plaintiff's allegations sounding in fraud fare no better. As the Court previously specified, under "Fed. R. Civ. P. 9(b), allegations of fraud 'must be accompanied by the who, what, when, where, and how of the misconduct charged.'" Order 5 (doc. 8) (quoting *Vess v. Chiba-Geigy Corp.*

Page 6 – ORDER

*USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)). Oregon law additionally requires facts demonstrating the following elements:

> (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted on by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; (9) and his consequent and proximate injury.

*Id.* (quoting *Nettleton v. Exact Scis. Corp.*, 645 F.Supp.3d 1049, 1056 (D. Or. 2022), aff'd in relevant part, 2024 WL 3579334 (9th Cir. July 30, 2024)).

Here, the SAC's allegations once again neglect to meet these requirements. As noted above, plaintiff's factual allegations are limited to what a Cricket Wireless employee said about Prod Holdings Inc./Progressive Leasing LLC's financing – he does not delineate any false or misleading representation from a Prod Holdings Inc./Progressive Leasing LLC agent that he relied on to his detriment, or the actual terms of the underlying agreement. And, in any event, the SAC does not reflect that plaintiff actually made more than $2000 in iPhone payments. *See* SAC pg. 15 (doc. 9) ("Progressive Leasing breached the Oral and written contract agreed at the point of sale at cricket wireless, when they processed 2 payments a month [in the amount of $115.90] for 6 months a total of 12 payments").

Likewise, plaintiff's allegations against OnPoint Community Credit Union and Chase Bank do not identify "the who, what, when, where, and how of the misconduct charged" or a materially false representation and detrimental reliance. The SAC reflects that plaintiff is "100% [sure that] the employees at on point are responsible for the fraud of [his] account," but he does not provide any details surrounding this event – such as the date or circumstances – and his other allegations suggest that an unnamed third party was responsible for taking the funds. *Id.* at pg. 1; *see also Subramaniam*, 2013 WL 5462339 at *5 (allegations that "are conclusory and fail to allege

any specifics of the allegedly fraudulent conduct" and neglect to indicate "which defendant made the allegedly false statements," "what the content of the statements might have been," or "what damages or personal injury she has suffered as a result or how defendants' actions were the cause of her injuries" are insufficient, even from a pro se litigant, to state a fraud claim).

Finally, although the SAC asserts that a cause of action exists "against a company [where an individual's] personal data was compromised in a data breach," plaintiff does not assert that he suffered any injury as the result of a data breach. SAC pg. 16 (doc. 9). Rather, as discussed herein, he appears to be alleging that Prod Holdings Inc./Progressive Leasing LLC breached the parties' contract by charging additional funds and, separately, that OnPoint Community Credit Union committed fraud by allowing a third-party to cash a total of $6000 in checks from plaintiff's account.[2] In other words, there are no well-plead facts suggesting that any of named defendants disclosed plaintiff's personal information – e.g., name, date of birth, social security number, etc. – or that plaintiff's personal information was otherwise accessed or compromised during a data breach. Cf. *Greenstein v. Noblr Reciprocal Exch.*, 585 F.Supp.3d 1220, 1227 (N.D. Cal. 2022) ("the injury-in-fact requirement will be satisfied [for a data breach claim] when highly sensitive personal data, such as social security numbers and credit card numbers, are inappropriately revealed to the public and increase the risk of immediate future harm to the plaintiff").

---

[2] Due to the dearth of details surrounding plaintiff's bank account claims, the Court cannot conclude whether the Electronic Funds Transfer Act or another consumer protection law could apply in this context. *But see Deaconess Assocs., Inc. v. Wells Fargo Bank, N.A.*, 2022 WL 7690568, *1, 5-8 (D. Or. Sept. 19), *adopted by* 2022 WL 7584478 (D. Or. Oct. 13, 2022) (denoting that a negligence claim cannot be sustained against a bank based on a fraudulent wire transfer "because plaintiffs have not and cannot allege facts sufficient to establish a special relationship," and any violation of Oregon's Uniform Commercial Code "Article 4A, codified at ORS 74A.1010 to 74A.5070 . . . dictates that the only remedy [lies] against the party to whom [the bank] sent the wired money by mistake"); *Rahimian v. Wells Fargo Bank N.A.*, 2024 WL 4818797, *7 n.4 (C.D. Cal. Sept. 20, 2024) (Electronic Funds Transfer Act does not apply to transfers of funds made through check or wire transfer).

Page 8 – ORDER

## CONCLUSION

The SAC (doc. 9) is dismissed without prejudice. The Court is mindful of plaintiff's pro se status – however, given that the complaint is already in its third iteration, and plaintiff has done little to add to the original pleadings, he shall have one final opportunity to seek amendment. *Cf. Gimby v. Or. Health & Sci. Univ. Sch. of Nursing,* 2024 WL 3027858, *4 (D. Or. June 14, 2024) (dismissing the plaintiff's VII claim with prejudice where "the Amended Complaint added very little of substance"). Any motion to amend the complaint must conform with the Court's prior decisions and Rule 8(a), and be filed within 30 days. Failure to file an amended complaint as ordered will result in the dismissal of this action with prejudice.

DATED this 9th day of December, 2024.

/s/ Jolie A. Russo
Jolie A. Russo
United States Magistrate Judge