IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| JACOB JAMES BERNARDS, | Case No. 3:24-cv-01522-JR |
| Plaintiff, | FINDINGS AND RECOMMENDATION |
| v. | |
| PROD HOLDING, INC. *et al.*, | |
| Defendants. | |

RUSSO, Magistrate Judge:

Pro se plaintiff Jacob Bernards initiated this action against defendants Prod Holding Inc./Progressive Leasing LLC, Cricket Wireless, Chase Bank, and Sutton Bank/Cash App. On September 25, 2024, the Court granted plaintiff's application to proceed in forma pauperis but instructed the Clerk of the Court not to issue process until further order pursuant to 28 U.S.C § 1915(e).

Page 1 – FINDINGS AND RECOMMENDATION

On November 20, 2024, the Court dismissed plaintiff's first amended complaint for failure to allege a timely and plausible claim. The Court granted plaintiff leave to file a second amended complaint that complies with the requirements of Fed. R. Civ. P. 8(a).

On December 9, 2024, the Court dismissed plaintiff's second amended complaint for essentially the same reasons, instructing: "given that the complaint is already in its third iteration, and plaintiff has done little to add to the original pleadings, he shall have one final opportunity to seek amendment." Order 9 (Dec. 9, 2024) (doc. 10). For the reasons stated herein, plaintiff's third amended complaint ("TAC") fails to state a claim upon which relief may be granted and this case should be dismissed.

Under 28 U.S.C. § 1915(e), the district court must dismiss an *in forma pauperis* complaint, either sua sponte or pursuant to a motion made by the opposing party if it "is frivolous or malicious," or "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B); *Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc). To avoid dismissal under 28 U.S.C. § 1915(e), the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the plaintiff need not detail all factual allegations, the complaint must nonetheless provide "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). Thus, to state a plausible claim for relief, the complaint "must contain sufficient allegations of underlying facts" to support its legal conclusions. *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

Pro se plaintiffs do not have the benefit of legal counsel, therefore their pleadings are "held to less stringent standards" than pleadings drafted by lawyers. *Florer v. Congregation Pidyon Shevuyim, N.A.*, 639 F.3d 916, 923 n.4 (9th Cir. 2011). "Nevertheless, a pro se plaintiff's claims may be dismissed without leave to amend where it appears beyond doubt that the plaintiff can

Page 2 – FINDINGS AND RECOMMENDATION

prove no set of facts that would entitle [the plaintiff] to relief." *Graves v. Nw. Priority Credit Union*, 2020 WL 8085140, *2 (D. Or. Dec. 12, 2020), *adopted by* 2021 WL 96968 (D. Or. Jan. 9, 2021) (citing *Barrett v. Belleque*, 544 F.3d 1060, 1061-62 (9th Cir. 2008)).

Even construing plaintiff's pleadings in the most favorable and liberal light, the TAC is dismissed with prejudice for four reasons. Initially, much of the TAC is conclusory and devoid of factual support. As with plaintiff's prior complaints, he makes allegations of "covert surveillance" and "wiretap[ping]" surrounding the use of his data by other parties. *See, e.g.*, TAC pgs. 144, 152 (doc. 11). The Court "previously construed these allegations under the Federal Wiretap Act and Computer Fraud and Abuse Act" and, as with his earlier amendments, the TAC "does not add any well-plead facts to cure the articulated deficiencies." Order 2 (Dec. 9, 2024) (doc. 10) (citing Order 4-5 (Sept. 25, 2024) (doc. 5)). Thus, for the reasons stated in the Court's prior Orders, "these types of allegations fail to state a claim." *Id.* Similarly, plaintiff's allegations that social media, cookies, and preloaded applications constitute "PSYOPS" and "digital djinn," and the "listed business [are] responsible for the breach of [his] personal information" by exposure to "a botnet of scammers" and are guilty of "covert transhumanism" are "beyond unlikely or improbable." *Id.* at 2-3 (quoting Order of Dismissal 5 (Case. No. 3:24-00633-CL, doc. 9)); TAC pgs. 143-44, 148, 152 (doc. 11).

Second, as explained previously, "assertions about the wrongful actions of Prod Holding Inc./Progressive Leasing LLC and Meta/Facebook in other contexts and in relation to other individuals/entities are insufficient to maintain a claim in this case." Order 3 (Dec. 9, 2024) (doc. 10) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).

Third, the TAC still "includes a number of vague allegations that involve poorly defined events and/or parties that are not named as defendants." *Id.* For example, plaintiff continues to allege that his "artifacts" and "iPhone 14 were stolen by the Portland police bureau," which were

Page 3 – FINDINGS AND RECOMMENDATION

then "all auctioned." *Id.*; TAC pg. 143 (doc. 11). Additionally, plaintiff asserts that his devices were infected with "malicious software" used by a "botnet network of Meta platforms" and similarly, that the "botnet uses cash-App to gather consumers banking data." TAC pg. 154 (doc. 11). Plaintiff further alleges there is a "coordinated attack on individuals" by "scammers," "cash-App," "on-point community credit union," and "collections Northwest." *Id.* However, "the relationship between these events and plaintiff's more discrete factual allegations are unclear, such that the Court cannot conclude that the [TAC's] claims are timely and/or redressable." Order 3 (Dec. 9, 2024) (doc. 10) (citing *Subramaniam v. Beal*, 2013 WL 5462339, *4 (D. Or. Sept. 27, 2013); and *Sain v. City of Bend*, 309 F.3d 1134, 1139 (9th Cir. 2004)).

Fourth, plaintiff's distinct factual allegations are equally deficient. Plaintiff's main contention of wrongdoing continues to surround Prod Holding Inc./Progressive Leasing LLC's financing of the iPhone he purchased from Cricket Wireless, as well as purportedly fraudulent activity relating to his OnPoint Community Credit Union and Cash-App accounts.[1] The crux of the claim is as follows:

> I purchased an iPhone 14 pro max at cricket wireless through Progressive leasing LLC, I was told by the salesman at cricket wireless that I had 90-days to pay $1200 or 12-months to pay $2000[.] Progressive leasing LLC would process 1 payment a month of $115.90 at any time[.] I could pay off the remaining balance, or I could wait 12-months and pay the remaining balance left at the end of the lease, remember cricket wireless likes to lie to customers they call it "strategy." The leasing process is paperless . . . I had to rely 100% on the word of the salesman at cricket. On Thanksgiving of 2023 I noticed progressive leasing LLC processing multiple payments of $115.90 so I filed a fraud claim at chase bank fraud department . . . and they suspected "the merchant of fraudulent activity" so they gave me back 3 months of the money. Initially they gave me about $600 back then about a week later they deposited another $300 totaling in the amount of $928 returned into my account. I paid $40 stop transactions fee to chase bank to never process a payment

---

[1] The TAC does not appear to re-name OnPoint Community Credit Union as a defendant. As the Court noted previously, "OnPoint Community Credit Union was listed as a defendant in plaintiff's initial complaint but has since been omitted as a named party in the amended complaint." Order 4 n.2 (Nov. 20, 2024) (doc. 8); Order 4 n.1 (Dec. 9, 2024) (doc. 10).

Page 4 – FINDINGS AND RECOMMENDATION

> transaction for progressive leasing LLC again . . . About 1 month later chase bank processed another payment for progressive leasing LLC giving back the fraud claim plus taking all money I had in my account. After transaction my account was -$938 and the bank closed the Account . . . Chase bank did not follow my bank account agreement nor did they follow the stop transactions fee I paid them, they claimed they would put the $40 back into my account . . . Because of this incident I decided to open another account at On-point community credit union . . . Shortly after opening the account at on-point community credit union scammers got into my cash app account and stole $1300 from my On point community credit union account . . . not only did cash-App refuse to re pay me but on point community credit union listened to cash app and cashed a cashier's check into my on point community credit union account and let someone steal the remaining balance of the accounts . . . then they closed the account and sent me to collections Northwest.

TAC pg. 159 (doc. 11). In other portions of the TAC, plaintiff alleges that he "paid $435 down [on the iPhone] and paid another $938.84 which is more than the $1200." *Id.* at pgs. 1-3, 158.

The TAC's contract-based claims fail at the pleadings level. As the Court explained in its prior Orders, "[t]o state a breach of contract claim in Oregon, the 'plaintiff must show: (1) the existence of a contract; (2) the relevant contract terms; (3) that the plaintiff fully performed and did not breach the contract; and (4) that the defendant breached the contract terms resulting in damage to the plaintiff.'" Order 6 (Nov. 20, 2024) (doc. 8) (quoting *Matchniff v. Great Nw. Ins. Co.*, 224 F.Supp.3d 1119, 1124 (D. Or. 2016)); Order 4-5 (Dec. 9, 2024) (doc. 10) (same).

Although plaintiff concludes the "leasing process is paperless" such that he had to "rely 100% on the [Cricket Wireless employee's] word" — intimating that no formal written agreement existed — other portions of the TAC make clear that Prod Holding Inc./Progressive Leasing LLC furnished him with a contract, which he signed and had unrestricted access to. TAC pgs. 7, 9, 13-15 (doc. 11). As part of the contracting process, plaintiff was notified that he had been "approved at Cricket Wireless for up to $1,450.00* in cash price" and that "[t]he standard lease-to-own agreement offers 12 months to ownership and could cost more than double the cash price." *Id.* at pg. 6. He was also expressly informed he would be responsible for "bi-weekly" auto-recurring

Page 5 – FINDINGS AND RECOMMENDATION

payments in the amount of $115.99 and that his "12-month lease-to-own total [would be] $3,065.46." *Id.* at pgs. 11-12, 25.

Despite these undisputed facts, and the Court's prior instructions, plaintiff still has not furnished the specific terms of the contract at issue. Nonetheless, the contractual terms that are apparent from the TAC suggest that there has been no breach. Therefore, any breach of contract claim fails for the reasons previously identified.[2] Order 7 (Nov. 20, 2024) (doc. 8); Order 5-6 (Dec. 9, 2024) (doc. 10); *see also Campos v. Bluestem Brands, Inc.*, 2016 WL 297429, *8 (D. Or. Jan. 22, 2016) ("The Oregon Supreme Court has found that a consumer may be bound by an agreement's terms . . . 'even though he is unaware of those terms because he has failed to read the policy, or having read the policy misunderstands it.'") (quoting *Knappenberger v. Cascade Ins. Co.*, 259 Or. 392, 398, 487 P.2d 80 (1971)).

As an alternative to breach of contract, plaintiff raises the doctrine of promissory estoppel as a means of recovery, irrespective of an enforceable contract. *See, e.g.*, TAC pg. 157 (doc. 11). In Oregon, promissory estoppel is not a separate cause of action, but rather can serve as consideration to make a contract binding. *See Staley v. Taylor*, 165 Or.App. 256, 261, 994 P.2d 1220 (2000) ("promissory estoppel may be used to enforce some promises that would otherwise be too indefinite to form a binding contract"). The requirements are: "(1) a promise, (2) which the promisor, as a reasonable person, could foresee would induce conduct of the kind which occurred, (3) actual reliance on the promise, (4) resulting in substantial change in position." *Barinaga v. JP Morgan Chase & Co.*, 749 F.Supp.2d 1164, 1176 (D. Or. 2010) (citing *Rick Franklin Corp. v. State ex rel. Dept. of Transp.*, 207 Or.App. 183, 190, 140 P.3d 1136 (2006)).

---

[2] Plaintiff similarly alleges that "banking agreements" with Chase Bank, OnPoint Credit Union, and Cash-App were breached, although he likewise does not provide the agreements or specify which terms were purportedly violated. TAC pg. 159 (doc. 11).

Page 6 – FINDINGS AND RECOMMENDATION

Here, it is not clear what promise, if any, plaintiff seeks to enforce. Plaintiff alleges that a Cricket Wireless employee "promised [him] same as sticker price $1200 in a 90-day lease agreement" and that "the 12-month lease agreement would be $2000." TAC pg. 1 (doc. 11). Plaintiff further alleges that a Cricket Wireless employee "told [him] cricket would process 1 payment a month of $115.99," yet he acknowledges that "Progressive leasing LLC is a third-party Leasing company and is a separate entity than cricket wireless." *Id.* And, as discussed above, the TAC evinces that plaintiff did, in fact, enter into a separate written agreement with Prod Holding Inc./Progressive Leasing LLC and, thereafter, received emails with the precise terms of that agreement as well as bi-monthly statements (corresponding with each payment) that contradicted the Cricket Wireless employee's purported verbal statements. *See id.* at pgs. 6-13.

Given these circumstances, plaintiff fails to plausibly allege that a Cricket Wireless employee made a definite promise that could supersede the precise terms he agreed to in contracting with Prod Holdings Inc./Progressive Leasing LLC. This is especially true considering that plaintiff does not allege the Cricket Wireless employee promised him he would not be bound by the terms in the Prod Holdings Inc./Progressive Leasing LLC contract. *See Union Cent. Life Ins. Co. v. Kerron,* 128 Or. 70, 74, 264 P. 453 (1928) (absent fraud, a person who relies solely "upon what another says [a contract] contains without requesting that it be read" is estopped from claiming they are "not bound by its terms"). In sum, because the TAC does not plead facts demonstrating Cricket Wireless made a definite and enforceable promise upon which plaintiff reasonably relied, he cannot recover under a theory of promissory estoppel. *See Barinaga,* 749 F.Supp.2d at 1177 (the plaintiff remained "obligated to establish the existence of valid consideration" to support an alleged oral agreement where she "failed to allege the existence of a definite promise").

Page 7 – FINDINGS AND RECOMMENDATION

Plaintiff's allegations sounding in fraud fare no better. As the Court previously specified, under "Fed. R. Civ. P. 9(b), allegations of fraud 'must be accompanied by the who, what, when, where, and how of the misconduct charged.'" Order 5 (Nov. 20, 2024) (doc. 8) (quoting *Vess v. Chiba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)); Order 6-7 (Dec. 9, 2024 (doc. 10) (same). Oregon law additionally requires facts demonstrating the following elements:

> (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted on by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; (9) and his consequent and proximate injury.

Order 5 (Nov. 20, 2024) (doc. 8) (quoting *Nettleton v. Exact Scis. Corp.*, 645 F.Supp.3d 1049, 1056 (D. Or. 2022), *aff'd in relevant part*, 2024 WL 3579334 (9th Cir. July 30, 2024)); Order 7 (Dec. 9, 2024) (doc. 10) (same).

The TAC fails to meet these requirements. As noted above, plaintiff's factual allegations are limited to what a Cricket Wireless employee said about Prod Holdings Inc./Progressive Leasing LLC's financing – he does not delineate any false or misleading representation from a Prod Holdings Inc./Progressive Leasing LLC agent that he relied on to his detriment, or the actual terms of the underlying agreement. And, in any event, the TAC does not reflect that plaintiff actually made more than the contracted-for-amount in iPhone payments. *See, e.g.*, TAC pgs. 3, 24-25 (doc. 11).

Likewise, plaintiff's allegations against OnPoint Community Credit Union and Chase Bank do not identify "the who, what, when, where, and how of the misconduct charged" or a materially false representation and detrimental reliance. The TAC suggests plaintiff is concerned with the banking institutions' role in "allowing unauthorized users access to [his] information," but does not provide any instances of false representations on the part thereof. *Id.* at pg. 149; *see*

Page 8 – FINDINGS AND RECOMMENDATION

*also Subramaniam*, 2013 WL 5462339 at *5 (allegations that "are conclusory and fail to allege any specifics of the allegedly fraudulent conduct" and neglect to indicate "which defendant made the allegedly false statements," "what the content of the statements might have been," or "what damages or personal injury she has suffered as a result or how defendants' actions were the cause of her injuries" are insufficient, even from a pro se litigant, to state a fraud claim). In fact, because plaintiff's contract with Prod Holdings Inc./Progressive Leasing LLC specified two (as opposed to one) monthly payments in the amount of $115.99, OnPoint Community Credit Union appears to have correctly determined that these charges were not fraudulent and reversed its initial determination accordingly.

Finally, the TAC asserts that Cash-App, Chase Bank, and On-Point Community Credit Union "have allowed scammer and [u]nauthorized users access to [plaintiff's] personal information" – i.e., "card numbers," "social security information," and his "home address." TAC pg. 5 (doc. 11). While plaintiff asserts that he suffered an injury as the result of a data breach, he alleges no factual basis to support his conclusion that the named banking institutions were responsible for that breach. *See Iqbal*, 556 U.S. 662, 679 ("[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.").[3] Moreover, plaintiff's invocation of the Right to Financial Privacy Act is misplaced, as that statutory scheme only protects financial institution disclosure of citizens' financial records from government authorities and the TAC does not allege this type of improper disclosure. 12 U.S.C. §§ 3408-3410; *see also Puerta v. United States*, 121 F.3d 1338, 1341 (9th Cir. 1997) ("The statute lays out a carefully constructed scheme

---

[3] As noted in previous Orders, due to the dearth of details surrounding plaintiff's bank account claims, the Court cannot conclude whether the Electronic Funds Transfer Act or another consumer protection law could apply in this context. Order 8 n.2 (Dec. 9, 2024) (doc. 10).

Page 9 – FINDINGS AND RECOMMENDATION

so that the customer generally gets notice of what is going on between the government and his bank, and may contest it, with exceptions.").

## RECOMENDATION

The TAC (doc. 11) fails to state a claim on which relief may be granted. Noting this is plaintiff's fourth iteration of the Complaint, judgment should be prepared dismissing this case with prejudice.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order. The parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the court. Thereafter, the parties shall have fourteen (14) days within which to file a response to the objections. Failure to timely file objections to any factual determination of the Magistrate Judge will be considered as a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to this recommendation.

DATED this 10th day of February, 2025.

/s/ Jolie A. Russo
Jolie A. Russo
United States Magistrate Judge